IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| IVORY MINOR, § | |
| § | |
| Movant, § | |
| § | |
| v. § | Civil Action No. 4:23-cv-949-O |
| § | (Criminal No. 4:21-cr-126-O(1)) |
| UNITED STATES OF AMERICA, § | |
| § | |
| Respondent. § | |

**OPINION and ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255 and DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is Defendant Ivory Minor ("Minor")'s motion to vacate under 28 U.S.C. § 2255 and incorporated brief (ECF No. 4), the government's response (ECF No. 9), and Minor's reply (ECF No. 10). After considering the § 2255 amended motion, response, reply, record, and applicable law, the Court **DENIES** the motion to vacate under § 2255.

**I.     BACKGROUND**

    **A.     Overview**

Ivory Minor seeks to set aside his conviction and sentence under 28 U.S.C. § 2255. Mot. Vacate, ECF No. 4.[1] Minor argues that both his counsel at his plea hearing—Douglas Greene, Sr.—and his counsel at his sentencing—Loren Green—each provided ineffective assistance of counsel. The Court will address all of his arguments herein.

    **B.     Statement of the Case**

On May 26, 2021, Minor pleaded guilty to an information charging him with conspiracy to distribute and possess with intent to distribute a controlled substance (fentanyl) in violation of

1

21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Felony Information, CR ECF No. 26; Factual Resume (FR), CR ECF No. 30; Plea Agreement, CR ECF No. 31; Arraignment Tr., CR ECF No. 69. On September 9, 2021, the Court sentenced Minor to 110 months' imprisonment. Judgment 1-4, CR ECF No. 56. Minor filed a direct appeal, and the Fifth Circuit dismissed it as frivolous on August 4, 2022. *See United States v. Minor*, No. 21-10896, 2022 WL 3098729 (5th Cir. Aug. 4, 2022). Minor's conviction became final on November 2, 2022, the date on which the time for him to file a certiorari petition expired. *See Clay v. United States*, 537 U.S. 522, 532 (2003) (holding that finality attaches when the time for seeking review expires). Minor timely and constructively filed his motion construed as seeking relief under § 2255[2] on August 18, 2023.[3] Mot.1-16, ECF No. 4; *see* 28 U.S.C § 2255(f)(1).

    C.    **Statement of Facts**

        1.    <u>Offense Conduct</u>

Between May 2020 and November 2020, Minor, along with Abraham Lewis, Johnny Britt, and others, conspired to distribute and possess with intent to distribute at least 40 grams of fentanyl. FR 2, CR ECF No. 3. The factual resume explains that "Minor would receive pills that

---

[1] "ECF No. __" refers to the docket number entries in this civil case number assigned to this § 2255 motion. "CR ECF No. __" refers to the docket number entries in the underlying criminal case *United States v. Minor*, 4:21-cr-126-O-1 (N.D. Tex.).

[2] Minor filed a motion for "intervening change in law" (ECF No. 1), which the Court construed as a motion pursuant to 28 U.S.C. § 2255 resulting in the opening of the civil case number 4:23-cv-949-O. Order, ECF No. 2. Minor was directed to "file an amended motion on the Court's Section 2255 form that includes all grounds for relief he believes are available to him." *Id.* Minor then completed and filed the form § 2255 Motion. Mot. Vacate 1-16, ECF No. 4.

[3] A pro se prisoner's habeas corpus petition is constructively filed when the prisoner delivers the papers to prison authorities for mailing to the district court. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000) (citing *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998)). Although the Clerk of Court received Minor's motion construed as seeking relief under § 2255 on September 12, 2023, that motion was signed on August 18, 2023. Mot. 3-4, ECF No. 1. Thus, August 18, 2023 is the earliest date Minor's motion seeking § 2255 relief was constructively filed.

contained fentanyl, and he would distribute those pills from a building called DFW Hall located on E. Berry Street in Fort Worth, Texas, sometimes with the help of Lewis and Britt." *Id.* at 2. In October 2020, an undercover officer ("UC") recorded a phone call with Minor in which the UC arranged to purchase "100 'blues' for $3000" at the DFW Hall. (CR No. 30 at 2.) Upon arrival at the DFW Hall, "the UC called Minor who said that Minor's brother would bring the pills out." *Id.* "Moments later, Lewis came out of [the] DFW Hall" and gave the UC "a white pill bottle" which contained one hundred pills that "later laboratory tests confirmed contained a detectable amount of . . . fentanyl" in exchange for $3,000. *Id.*

### 2. Conviction and Sentencing

Based on these facts, law enforcement obtained a criminal complaint, and Minor was arrested. Compl. 1-5, CR ECF No. 1. Minor then retained Douglas Greene, Sr. as his counsel. Attorney Appearance, CR ECF No. 21. As part of a written plea deal, Minor was charged and pleaded guilty to one count of conspiracy to distribute and possess with intent to distribute a controlled substance (fentanyl) in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Plea Agreement, CR ECF No. 31. In the plea agreement, Minor affirmed that "[t]here have been no guarantees or promises from anyone as to what sentence the Court will impose" and that he "fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court." *Id.* at 3, 5. The plea agreement provided that "[t]he maximum penalties the Court can impose include imprisonment for at least five years and not to exceed 40 years." *Id.* at 2. In the factual resume, Minor acknowledged that the conspiracy involved at least 40 grams of a mixture and substance containing a detectable amount of fentanyl and that he knew or reasonably should have known that the scope of the conspiracy involved at

least 50 grams of a mixture and substance containing a detectable amount fentanyl. FR 2, CR ECF No. 30.

Minor was accompanied at his rearraignment hearing by his counsel, Douglas Greene, Sr. *See generally* Arraignment Tr., CR ECF No. 69. At his hearing, Minor told the Court, under oath, that he had read the plea documents and fully understood them before signing them and that no one had made him any promises to induce him to plead guilty. *Id.* at 27, 38. Minor also confirmed that he understood the specific terms of his plea agreement, including the amount of fentanyl attributed to him and the conspiracy. *Id.* at 32-33. Finally, the Court confirmed that Minor understood that "[t]he Court is not bound by facts that may be stipulated between [Minor] and [his] attorney on the one hand and the Government on the other [and that] [t]he Court can impose punishment that might disregard stipulated facts or take into account facts that are not mentioned in stipulations." *Id.* at 16-17. On this basis, Minor entered a plea of guilty. (*Id.* at 51), which the Court accepted. Order, CR ECF No. 37.

At some point after the rearraignment hearing, Douglas Greene, Sr. died. Counsel Appointment Hearing Tr. 2, CR ECF No. 84 ("COURT: Mr. Minor, as I'm sure you've heard, unfortunately, Mr. Doug Greene passed away.") At a subsequent hearing to address the status of Minor's representation, the Court asked Minor whether he wanted Loren Green appointed as replacement counsel, to which Minor responded that he did. *Id.* at 3, CR ECF No. 84. Accordingly, the Court appointed Loren Green as Minor's replacement counsel. CR ECF Nos. 39, 84.

A few weeks after Loren Green's appointment, the United States Probation Office issued a detailed PSR covering the nature of the instant offense and Minor's background. *See generally*

PSR, CR ECF No. 41-1. Among other things, the PSR held Minor accountable for 123.66 grams of fentanyl at a base offense level of 24. PSR ¶ 31. The PSR also assessed a two-level "dangerous weapon" enhancement under U.S.S.G. § 2D1.1(b)(1) for "sell[ing] drugs from the hall where firearms were also possessed." PSR ¶ 39. The PSR also recommended a two-level enhancement under U.S.S.G. § 2D1.1(b)(12) for maintaining a premises for manufacturing or distributing a controlled substance. PSR ¶ 40. With a combined three-level reduction under both U.S.S.G. §§ 3E1.1(a) and 3 E1.1(b), his total offense level was 25.  PSR ¶ 48. Minor received a total criminal history score of 14 placing him in a criminal history category VI. PSR ¶ 71. Taken together with his total offense level of 25, his advisory guidelines range was 110 to 137 months. PSR ¶ 113.

     Loren Green filed several objections to the PSR. Objections 1-5, CR ECF No. 43. He did not object to the PSR's drug-quantity finding. Instead, all four of his objections related to the two-level "dangerous weapon" enhancement. *Id.* at 1-4. Green argued the enhancement was improperly applied to Minor "on the grounds that the record fail[ed] to demonstrate that Mr. Minor was in possession of a dangerous weapon in conjunction with his drug trafficking offense." *Id.* at 1. The government responded in opposition to Minor's objections "because the unrebutted reliable evidence in the PSR establishe[d] Minor possessed a firearm during his drug-trafficking activity, and because the firearm possession by his two coconspirators was foreseeable." Response to Objections 1, CR ECF No. 44. The Probation Office issued an Addendum rejecting Minor's objections and standing by the PSR as originally written. PSR Addendum 2-3, CR ECF No. 47-1.

At sentencing, Minor was accompanied by his counsel, Loren Green. Sentencing Tr. 2, CR ECF No. 68. The Court first overruled Minor's objections to the "dangerous weapon" enhancement and adopted the PSR's factual findings. *Id*. at 2-3. After hearing from Loren Green and Minor himself on the appropriate sentence, the Court sentenced Minor to 110 months' imprisonment, at the bottom of the guidelines range. *Id.* 5-8; Judgment 2, CR ECF No. 56. As noted above, Minor's direct appeal was dismissed as frivolous.

## II.    GROUNDS FOR RELIEF

Minor claims that Douglas Greene, Sr. and Loren Green were both ineffective. As to counsel Douglas Greene, Sr., Minor contends that Greene was ineffective for (1) getting paid $45,000 and then dying after Minor pleaded guilty, and (2) promising Minor that he would receive a five-year sentence. Mot. Vacate 7, 13-14, ECF No. 4. As to counsel Loren Green, Minor contends that Green was ineffective for (1) lying to Minor and telling him that he was from the same firm as Greene, Sr.; (2) filing a motion without reviewing Minor's case and filing a crack cocaine motion; (3) telling Minor that he was pleading to 40 grams of fentanyl when he ended up pleading to 123 grams of fentanyl; (4) allowing Minor to receive 2-point firearm enhancement; and (5) failing to object to Minor's criminal history score. Mot. Vacate 14-16, ECF No. 4.

## III.    APPLICABLE LAW

### A.    Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the

6

sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" 28 U.S.C. § 2255(a) (West 2019); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

## B. Law Applicable to Review of Ineffective-Assistance Claims under § 2255.

Ineffective-assistance-of-counsel ("IAC") claims can be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish IAC, "[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

To show deficient conduct under *Strickland*, the burden is on the defendant to show that his counsel's representation fell below an objective standard of reasonableness, by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of

7

professionally competent assistance." *Id.* There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995). Defendant cannot overcome this presumption with after-the-fact accusations that lack supporting evidence. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (noting that although pro se § 2255 motions are construed liberally, even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). If counsel provides objectively unreasonable representation during the plea process, the defendant must prove prejudice by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

To prove prejudice generally, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Failure to meet either the deficient-performance or prejudice prongs will defeat a claim of ineffective-assistance. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The reviewing court need not address both components if there is an insufficient showing on one. *Id.*

## IV.     ANALYSIS

### A.     Claims regarding counsel Douglas Greene, Sr.'s Alleged Promise and Death (Responsive to Minor's Ground I)

Minor contends that his first counsel, Douglas Greene, Sr., was ineffective because (1) he was "[p]aid $45,000.00 dollars and he died as soon [Minor] plead [sic] guilty;" and (2) he "told [Minor that he] would only be getting 5-years for [his] crime." Mot. Vacate 13-14, ECF No. 4. Each argument is without merit.

As to his first argument, Minor fails to present a cognizable claim under § 2255. The Sixth Amendment guarantees a defendant the right to counsel "at every stage in the proceedings against him, including sentencing." *Roeth v. United States*, 380 F.2d 755, 756 (5th Cir. 1967). Minor was afforded that right. Indeed, after Douglas Greene, Sr. died, the Court appointed Loren Green as his new counsel, after Minor stated that he wanted the Court to do so. Counsel Appointment Hearing 3, CR ECF No. 84.  The record reflects that Loren Green was present—along with Minor—at the sentencing hearing and zealously represented his client by filing objections to the PSR and a sentencing memorandum in advance of the hearing and presenting oral argument on Minor's behalf at the hearing. Sentencing Tr. 5, ECF No. 68  ("THE COURT: I've reviewed your sentencing memorandum and thank you for providing that to me in advance."); Objections, CR ECF No. 43; Objections Addendum, CR ECF No. 49; Sentencing Memorandum, CR ECF No. 45. Because Minor was represented at every stage of the proceedings, Minor's Sixth Amendment right to counsel was protected.[4]

---

[4] To the extent Minor seeks repayment of any attorney's fees paid to Douglas Greene, Sr., prior to his death, he has not shown that such request is cognizable in a § 2255 motion.

As to his second argument regarding an alleged promise by Douglas Greene, Sr. as to his sentence, the Court rejects this claim as overwhelmingly belied by Minor's sworn statements to the contrary and for failing to demonstrate prejudice. At the rearraignment hearing, Minor told the Court, under oath, that no one had made him any promises to induce him to plead guilty. Arraignment Tr. 27, CR ECF No. 69.  He stated that he understood that the Court had sole discretion to choose his sentence as long as it was "reasonable" and "based upon the facts and the law." *Id*. at 17-18.   Minor also told the Court, again under oath, that he read the plea documents and fully understood them before signing them. *Id.* at 38. These sworn statements are entitled to a strong presumption of verity in this post-conviction proceeding. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) ("Solemn declarations in open court carry a strong presumption of verity," forming a "formidable barrier in any subsequent collateral proceedings.").

As noted, Minor also signed a written plea agreement, affirming that "[t]here have been no guarantees or promises from anyone as to what sentence the Court will impose." Plea Agreement 5, CR ECF No. 31. In that same signed plea agreement, Minor also affirmed that he "fully understands that the actual sentence imposed (so long as it is within the statutory maximum) is solely in the discretion of the Court." *Id.* at 3. Like his sworn statements at the rearraignment hearing, the statements in official documents—*i.e*., Minor's written plea agreement—are "entitled to a presumption of regularity and accorded great evidentiary weight." *Hobbs v. Blackburn*, 752 F.2d 1079, 1081 (5th Cir. 1985).

Under well-settled law, Minor may only rebut the presumption of verity afforded to his prior sworn statements if he shows "(1) the exact terms of the alleged promise; (2) exactly when,

10

where, and by whom the promise was made; and (3) the precise identity of an eyewitness to the promise." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (citation omitted); *see also United States v. Soliz*, 359 F. App'x 466, 470 (5th Cir. 2009) (explaining that "a defendant ordinarily may not refute his sworn testimony at a plea hearing while under oath."). Minor must "produce[] independent indicia of the likely merit of [his] allegations," such as "one or more affidavits from reliable third parties." *Cervantes*, 132 F.3d at 1110; *cf. United States v. Perez*, 227 F. App'x 357, 360-61 (5th Cir. 2007) (concluding that two affidavits—each of which described independent accounts with credible details and adequate specificity—from third-party witnesses were sufficient to support the movant's allegations and warrant an evidentiary hearing).

Minor makes no such showing. He has failed to detail exactly when or where Douglas Greene, Sr. promised him a sentence of five years. Mot. Vacate 7, CR ECF No. 4. He also fails to identify a single third-party witness to this alleged promise—let alone offer reliable evidence that might support such an account. *See Cervantes*, 132 F.3d at 1110. Because Minor attempts to rely only on his own self-serving allegations to rebut his earlier sworn statements, the Court must reject any claim that counsel promised him a specific sentence. *See Id.* (holding that the district court correctly denied the movant's post-conviction claims, without a hearing, where the "defendant's showing [was] inconsistent with the bulk of [his] conduct or otherwise failed to meet [his] burden of proof in light of other evidence in the record."); *see also Kim v. United States*, No. 3:16-cv-3262-B-BN, 2018 WL 3626339, at *5 (N.D. Tex. July 9, 2018), *rep. and rec. adopted*, 2018 WL 3617937 (N.D. Tex. Jul. 30, 2018) (denying, without an evidentiary hearing, an ineffective-assistance-of-counsel claim predicated on allegations belied by the movant's prior

sworn statements); *see also Gluck v. United States*, Nos. 3:13-cr-002-M-1 & 3:16-cv-961-M-BT, 2018 WL 3039255, at *2 (N.D. Tex. May 29, 2018), *rep. and rec. adopted*, 2018 WL 3036476 (N.D. Tex. Jun. 19, 2018) (same).

Moreover, Minor fails to demonstrate that he was prejudiced by this purported error, which is required to establish an ineffective assistance of counsel claim. *See Strickland*, 466 U.S. at 687 ("[T]he defendant must show that the deficient performance prejudiced the defense."); *Hill*, 474 U.S. at 59 (requiring a showing of prejudice that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial"). In other words, Minor does not show that, but for his counsel's alleged deficiency, he would not have entered into his guilty plea. Accordingly, this ineffective-assistance-of-counsel claim fails.

### B. Minor's Claims Regarding Second Counsel Loren Green (Responsive to Minor's Ground II)

Next, Minor argues that his second counsel, Loren Green, was ineffective by (1) lying to him and telling him he was "from the same firm;" (2) filing a motion "without reviewing [Minor's] case; (3) telling Minor that he was "pleading to 40 grams in which [he] ended up pleading to 123 grams;" (4) allowing Minor "to receive a 2-point firearm enhancement [even though Minor] was not charged with a firearm;" and (5) filing "a crack cocaine motion [even though Minor] was not charged with crack cocaine." Mot. Vacate 14, ECF No. 4. The Court will address these claims in turn.

#### 1. Loren Green Alleged Misrepresentation that He was from Same Firm.

While not clear from Minor's motion, the government assumes that when Minor references "the same firm," he is referring to the law firm of his first attorney, Douglas Greene, Sr. At the outset, this contention is belied by the record. At the appointment of counsel hearing

12

following the death of Douglas Greene, Sr., Minor told the Court that he "didn't know if somebody from [Douglas Greene, Sr.'s] firm was coming or whatever or whatnot . . . [b]ut . . . since [he's] been talking to this gentleman right here [Loren Green], [Minor] [doesn't] want to slow [his] process up any." Counsel Appointment Hearing 2-3, CR ECF No. 84.  The Court then informed Minor that it believed Douglas Greene, Sr. was a solo practitioner. *Id.* at 3.  After hearing that information, Minor still told the Court that he wanted Loren Green appointed as his counsel. *Id.*  Thus, regardless of any alleged lie made by Loren Green to Minor, at the time of Loren Green's appointment, Minor knew from the Court that Loren Green was not from Douglas Greene, Sr.'s firm.

But even if the allegation is true that Loren Green lied and told Minor that he was from Douglas Greene, Sr.'s firm, Minor fails to establish how Loren Green's firm affiliation impacted his performance as Minor's counsel during the sentencing phase. Minor also fails to establish any prejudice—namely, that Minor would not have proceeded with his sentencing had he known that Loren Green was not from Douglas Greene, Sr.'s law firm. Accordingly, this ineffective-assistance-of-counsel claim fails.

        2.      <u>Loren Green's Allegedly Filing Unauthorized Motion and Failing To File Crack Motion</u>

While pro se filings are liberally construed, those relaxed standards do not require the Court to guess or to develop the arguments on the litigant's behalf. *See United States v Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (ruling that pro se litigants are still required to provide sufficient facts in support of their claims, and even under the rule of liberal construction "mere conclusory allegations on critical issues are insufficient to raise a constitutional issue"). Relaxed standards

13

are still standards, and Minor's allegation regarding the filing of an unspecified motion before reviewing his case and a "crack cocaine motion"—the latter of which the Court cannot identify from the record at the time of the filing of this § 2255 motion —is so utterly lacking in detail that Minor fails to overcome the evidence that is properly in the record. *See Blackledge,* 431 U.S. at 73-74 ("The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of record are wholly incredible."). This claim, therefore, fails.

### 3. Loren Green Representation that Minor was Pleading to 40 grams of Fentanyl even though he was found responsible for 123 grams of Fentanyl.

At the outset, this claim fails because Douglas Greene, Sr.—not Loren Green—was Minor's counsel from the case's inception through his guilty plea. Notice of Appearance by Douglas Greene, Sr., CR ECF No. 21; Rearraignment Tr. 3, 5-6, CR ECF No. 69; Plea Agreement Signature page 7, CR ECF No. 31. Indeed, Loren Green only became Minor's counsel after Minor entered a guilty plea based on a written plea agreement.

But even if this ineffective-assistance-of-counsel claim is construed against Douglas Greene, Sr., the Court should reject it as overwhelmingly belied by Minor's sworn statements to the contrary and for failing to demonstrate prejudice. At his rearraignment hearing, Minor acknowledged that he understood that an element of his plea agreement was that "the overall scope of the conspiracy involved *at least* 40 grams of a mixture and substance containing a detectable amount of fentanyl" and that he "knew or reasonably should have known that the scope of the conspiracy involved *at least* 50 grams or more of a mixture or substance containing a detectable amount of fentanyl." Rearraignment Tr. 32-33, CR ECF No. 69 (emphasis added).

14

This language mirrors the factual resume Minor signed and acknowledges that Minor could be held responsible for upwards of 40 or 50 grams of fentanyl. FR 2, CR ECF No. 30. Minor also confirmed at his rearraignment that he understood that, at sentencing, "[t]he Court is not bound by facts that may be stipulated between [Minor] and [his] attorney on the one hand and the Government on the other [and that] [t]he Court can impose punishment that might disregard stipulated facts or take into account facts that are not mentioned in stipulations." Rearraignment Tr. 16-17, CR ECF No. 69. Thus, even if some agreement had been made between Minor and his counsel regarding the amount of fentanyl that Minor would be held responsible for, Minor acknowledged that such understanding would not bind the Court in rendering its sentence. These statements, made under oath, are entitled to a presumption of truth which Minor fails to rebut with evidence. *See Cervantes*, 132 F.3d at 1110. Minor's claim fails on that basis.

Moreover, the claim fails for lack of prejudice. In other words, Minor fails to allege that there is a reasonable probability that, but for counsel's purported errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59. Indeed, after receiving the PSR, which held Minor accountable for 123.66 grams of fentanyl, (PSR ¶ 31, CR ECF No. 41-1), Minor did not object to that finding in that it ran counter to his alleged agreement with his counsel—despite his counsel filing multiple other objections to the PSR. Objections 1-4, CR ECF No. 43; Addendum to Objections 1-2, CR ECF No. 49. Nor did Minor move to withdraw his guilty plea. Instead, Minor proceeded to sentencing, where his counsel, Loren Green, acknowledged reviewing the PSR with him. Sentencing Tr. 2, CR No. 68. In light of this record, Minor fails to establish prejudice, and his claim fails on that ground as well.

15

        4.      <u>Loren Green Allegedly Allowing Minor to Receive 2-Point Firearm Enhancement.</u>

Minor alleges that counsel Loren Green "allowed" him to receive a dangerous-weapon enhancement. This allegation is wholly refuted by the record, as Loren Green objected to the PSR's allocation of a 2-point dangerous weapon enhancement. Thus, Minor cannot establish deficient performance. PSR ¶ 39, CR ECF No. 41-1; Objections 1-4, CR ECF No. 43. Indeed, all four of Green's objections to the PSR—spanning four pages—object to that specific enhancement and its impact on Minor's guideline range, citing the Sentencing Guidelines and governing caselaw. Objections 1-4, CR ECF No. 43. After reviewing the government and the Probation Office's opposition to Green's objections, the Court overruled counsel's objections to the enhancement. Sentencing Tr. 2-3, CR ECF No. 68. Because Green objected to the "dangerous weapon" enhancement, Minor fails to establish deficient performance, rendering this claim to be without merit.

**C.     Claim that Loren Green Failed to Object to Minor's Criminal History Score. (Responsive to Minor's Grounds III and IV)**

Finally, Minor contends that his second counsel Loren Green was ineffective for failing to object to the PSR's allocation of criminal history points for his state convictions for (1) possession with intent to deliver a controlled substance of four grams or more, but less than 200 grams, namely cocaine; and (2) assault causing bodily injury - family member. Mot. Vacate 7-8, ECF No. 4. Minor received three criminal history points for the former offense and one criminal history point for the latter offense. PSR ¶¶ 63, 66, CR ECF No. 41-1. As to the former offense, Minor argues that, because Texas's definition of "cocaine" is broader than the federal definition, he should not have received criminal history points for that offense. Mot. Vacate 14-16, ECF No.

16

4. As to the latter offense, Minor argues that, because Texas's definition of "assault" is broader than the federal definition, it is not a crime of violence and, therefore, does not warrant criminal history points. Mot. Vacate 15-16, ECF No. 4.

Minor's arguments are based on a fundamental misunderstanding of how criminal history points are calculated. "The Sentencing Guidelines direct district courts to calculate a defendant's criminal history score in part by assessing points for each of the defendant's prior sentences of imprisonment." *United States v. Blanco*, 27 F.4th 375, 380 (5th Cir. 2022) (citing U.S.S.G. § 4A1.1). Under the Sentencing Guidelines, three criminal history points are allotted for "each prior sentence of imprisonment exceeding one year and one month," U.S.S.G. § 4A1.1(a); two criminal history points are allotted for "each prior sentence of imprisonment of at least sixty days" and up to one year and one month, U.S.S.G. § 4A1.1(b); and one criminal history point is allotted for each prior sentence of less than sixty days, U.S.S.G. § 4A1.1(c).

Minor does not contest the PSR's findings that, in 2006, he pleaded guilty to (1) possession of cocaine with intent to distribute and was sentenced to five years' imprisonment; and (2) assault of a family member and was sentenced to two days' imprisonment. PSR ¶¶ 63, 66, CR ECF No. 41-1. He also does not contest, nor could he, that the former conviction and sentence fall squarely within U.S.S.G. § 4A1.1(a)'s three-criminal-history-point category and the latter conviction and sentence fall squarely within U.S.S.G. §4A1.1(c)'s one-criminal-history-point category. U.S.S.G. § 4A1.1(a), (c). Instead, he contends that his counsel should have objected to those criminal history points on the basis that Texas defines "cocaine" and "assault" more broadly than its federal counterparts. But the Sentencing Guidelines say nothing about distinctions between the definitions of state and federal crimes as it relates to calculating criminal

17

history points. Rather, the Guidelines are solely focused on allotting criminal history points based on "prior sentences" and the length of imprisonment for those prior sentences. The guidelines explain "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Minor's arguments regarding the definitions of "cocaine" and "assault" under Texas law have no impact on calculating his criminal history points. Indeed, the PSR's allocation of one criminal history point for Minor's assault of a family member conviction had nothing to do with whether the offense was a "crime of violence," as Minor argues. Mot. Vacate 15-16, ECF No. 4. Rather, it was allotted based on Minor pleading guilty and receiving a prison term of two days. PSR ¶ 66 (citing U.S.S.G. § 4A1.1(c)).) Minor's counsel did not act deficiently in failing to make these unsupported arguments about his criminal history calculation.[5] *See Clark v. Collins*, 19 F.3d 959 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite.").

For all of these reasons, the Court finds and determines that Minor's § 2255 motion must be denied.

---

[5] Minor includes an unsupported and unsubstantiated claim that his counsel "failed to file a[n] Intervening Change in Law for my prior Assault conviction and Cocaine conviction which are no longer criminal." Mot. Vacate 14, ECF No. 4. Assuming this claim to be that counsel should have objected to his criminal history points for the assault and cocaine convictions because of the different definitions under state and federal law, such argument fails for the reasons already explained. To the extent Minor is presenting a different claim, any such argument fails for vagueness as Minor does not describe what change in the law he is referring to or what filing he believes was necessary. *See generally Blackledge*, 431 U.S. at 73-74.

## V.     CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Fed. R. App. P. 22 (b). Rule 11 of the Rules Governing Section 2255 Proceedings now requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court concludes that Ivory Minor has not made a showing that reasonable jurists would question this Court's rulings and, accordingly, **DENIES** a certificate of appealability for the reasons stated in this order.

## VI.    CONCLUSION and ORDER

It is therefore **ORDERED** that Ivory Minor's motion to vacate under 28 U.S.C. § 2255 (ECF No. 4) is **DENIED.** It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this **22nd day** of **April, 2024**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**